**Nos. 2023-1497, 2023-1498, 2023-1499, 2023-1500**

# In the United States Court of Appeals for the Federal Circuit

**TELIT CINTERION DEUTSCHLAND GMBH, fdba Thales DIS AIS Deutschland GmbH, HONEYWELL INTERNATIONAL INC., SIERRA WIRELESS, ULC, fka Sierra Wireless, Inc., TCL COMMUNICATION TECHNOLOGY HOLDINGS LIMITED, TCT MOBILE INTERNATIONAL LIMITED, TCT MOBILE, INC., TCT MOBILE (US) INC., TCT MOBILE (US) HOLDINGS, INC.,**

*Appellants*

v.

**3G LICENSING, S.A.**

*Appellee*

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in IPR2021-00906

## APPELLANTS' REPLY BRIEF

January 16, 2024

Guy Yonay
Kyle Auteri
PEARL COHEN
ZEDEK LATZER BARATZ LLP
7 Times Square, 19th Floor
New York, NY 10036
646.878.0800
E-mail: GYonay@PearlCohen.com
KAuteri@PearlCohen.com
Counsel for Appellant
Telit Cinterion Deutschland GmbH

*[additional counsel on inside cover]*

Amanda Tessar
**Perkins Coie LLP**
1900 Sixteenth Street
Suite 1400
Denver, Colorado 80202
303.291.2357
ATessar@perkinscoie.com

Daniel T. Keese
**Perkins Coie LLP**
1120 NW Couch Street
10th Floor
Portland, Oregon 97209-4128
503.727.2132
DKeese@perkinscoie.com

***Attorneys for Appellant***
***Sierra Wireless, ULC***

Jeffrey R. Gargano
Erik J. Halverson
**K&L Gates LLP**
70 West Madison Street
Chicago, Illinois 60602-4207
312.781.7166
312.807.4243
Jeffrey.Gargano@klgates.com
Erik.Halverson@klgates.com

Brian P. Bozzo
**K&L Gates LLP**
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
412.355.8235
Brian.Bozzo@klgates.com

***Attorneys for Appellant***
***Honeywell International Inc.***

Jeremy Deane Peterson
**PV Law LLP**
5335 Wisconsin Ave, NW
Suite 440
Washington, DC 20015
202.871.0140
Jeremy.Peterson@pvuslaw.com

Bradford Cangro
**PV Law LLP**
5335 Wisconsin Avenue, NW
Suite 440
Washington, DC 20015
202.869.4667
Bradford.Cangro@pvuslaw.com

***Attorneys for Appellants***
***TCL Communication Technology Holdings Limited, TCT Mobile International Limited, TCT Mobile, Inc., and TCT Mobile (US) Inc. and TCT Mobile (US) Holdings, Inc.***

# TABLE OF CONTENTS


I. Summary of Argument ........ 1

II. Argument ........ 3

A. Sisvel Urges This Court To Apply An Incorrect Standard Of Review ........ 4

B. There Is No Substantial Evidence To Support The Board's Finding That The Substitute Claims Are Supported By The Original Disclosure ........ 6

1. There Is No Adequate Written Description Support Claims 66 And 74 ........ 6

2. The Board Interpreted "Additional" Inconsistently ........ 9

3. There Is No Written Description Support For The "another message" And "a message preceding the another message" Recited In Dependent Claims 69 And 77 ........ 11

a. The Initial Direct Transfer Message Must Be Read In Light Of TS-25.331 ........ 12

b. TS-25.331 Teaches Transmitting The Initial Direct Transfer Message After The RRC Connection Procedure ........ 13

c. Sisvel's "Fourth Embodiment" Is Unavailing ........ 14

C. The Substitute Claims Are Unpatentable Over The Prior Art ........ 16

1. Claims 66 And 74 Were Anticipated Or Rendered Obvious By TS-25-331 ........ 18

a. Claims 66 and 74 Are Anticipated By TS-25.331 ........ 19

b. Claims 66 And 74 Would Have Been Obvious In View Of TS-25.331 ........ 21

2. Claims 66 And 74 Would Have Been Obvious In View Of TS-25.331 In Combination With Bannister ........ 23

3. Claims 66 And 74 Would Have Been Obvious In View Of TS-25.331 In Combination With Beckmann .......................25

4. The Additional Limitations Of Dependent Claims 69 And 77 Would Have Been Obvious Over TS-25.331 .......................27

a. Sisvel's Arguments for Written Description Support and Patentability Over The Prior Art Are Inconsistent .......................28

b. The Board Erred In Ignoring Evidence That Omitting Optional START Values Would Have Been Obvious .......................29

5. Claims 73 And 81 Would Have Been Obvious Over TS-25.331 .......................31

III. Conclusion .......................32

# TABLE OF AUTHORITIES

Case Page(s)

*Amgen v. Sanofi*,
598 U.S. 143 S. Ct. 1243 (2023) ....................16

*Arbutus Biopharma Corp. v. Modernatx, Inc.*,
Case No. 2020-1183 (Fed. Cir., Apr. 11, 2023) ....................17

*B/E Aero., Inc. v. C&D Zodiac, Inc.*,
962 F.3d 1373, 1379 (Fed. Cir. 2020) ....................18

*Fleming v. Cirrus Design Corp.*,
28 F.4th 1214, 1225 (Fed. Cir. 2022) ....................5, 23

*HTC Corp. v. Cellular Commc'ns Equip., LLC*,
877 F.3d 1361, 1369 (Fed. Cir. 2017) ....................18

*Hunting Titan, Inc. v. DynaEnergetics Europe GmbH*,
28 F.4th 1371, 1379 (Fed. Cir. 2022) ....................5

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398, 416 (2007) ....................22

*LizardTech, Inc. v. Earth Res. Mapping, Inc.*,
424 F.3d 1336, 1344 (Fed. Cir. 2005) ....................16

*Medytox, Inc. v. Galderma S.A.*,
71 F.4th 990, 996 (Fed. Cir. 2023) ....................5

*Nike Inc. v. Adidas AG*,
955 F.3d 45, 50-51, 54 (Fed. Cir. 2020) ....................5

*Sisvel Int'l S.A. v. Sierra Wireless, Inc.*,
81 F.4th 1231, 1238 (Fed. Cir. 2023) ....................4, 6

In its response brief ("Resp. Br."), Appellee 3G Licensing S.A.'s ("Sisvel" or "Appellee") continues to apply inconsistent meanings to amended claims 66 and 74 for its written description support, on the one hand, and invalidity over the prior art on the other. The specification language cited by Sisvel merely supports allowing a larger message size, rather than transmitting *both* a first and second transport block size (e.g., Resp. Br. 9, 28, 37). But to distinguish the prior art, Sisvel applies a different meaning unsupported by the specification: that the UE receives a first transmission that *actually includes* first and second transport block sizes (Resp. Br. 46-47.)

Sisvel cannot have it both ways. To the extent the amended claims are supported by the specification, they are invalid over the prior art. And to the extent they are patentable over the prior art, they are not supported by the specification. Accordingly, for the reasons discussed below and in Appellants' opening brief, the Board's FWD granting Sisvel's revised motion to amend should be reversed.

## I. Summary of Argument

Sisvel argues for patentability of the substitute claims based on a narrow construction of "***additional*** transport block size," even while attempting to avoid the lack of written description support for that interpretation. For context, the claim requires "receiving a first message in the mobile terminal, the first message including information indicating at least one available configuration … including

additional transport format information for the CCCH comprising an additional transport block size." (Appx63). Under Sisvel's interpretation, which the Board adopted in analyzing patentability over the prior art, the mobile terminal ***must receive*** in the first message a first transport block size and an "additional transport block size." (Appx81). However, the "additional" transport block size is the *only one* claimed – there is no other transport block size. When faced with a similar "additional" transport format information in original claims 1 and 33, the Board disregarded the term where no other transport format information was claimed. It was error to interpret the substitute claims to require transmission of two transport block sizes when only one is claimed.

For written description support, Sisvel points to the '388 patent's disclosure of ***allowing*** the mobile terminal to send larger messages without impacting legacy UEs (Resp. Br. 28), but there are multiple ways of achieving this stated result without actually ***transmitting*** a second transport block size. For patentability over the prior art, Sisvel continues to insist (and the Board erred in agreeing) that the claims were patentable over TS-25.331, which disclosed setting the transport block size to the *numerically equal* RLC size. (Appx79-81). Sisvel cannot have it both ways by adopting a different construction when analyzing written description than it does when attempting to distinguish over the prior art.

If the claim language "transmitting … additional transport block size" is to be understood broadly (as the Board interpreted "additional" in the original claims), then the disclosure of TS-25.331 either inherently anticipates by disclosing transmitting an RLC size, which is *numerically identical* to the transport block size, or renders obvious transmitting transport block size in view of transmission of the closely related RLC size. Even if "additional" merely means a different transport block size than mandated by TS-25.331, merely changing the transport block size would have been trivially obvious. And if "additional" is understood (as argued by Sisvel) to mean a *second* trasnport block size, this would likewise have been obvious over TS-25.331, in combination with Bannister and/or Beckmann.

The Board's decision to the contrary was in error, especially to the extent that the claim language is interepreted consistent with the specification. Sisvel cannot have its cake—in requiring the added subject matter be more specific than the actual words it added—and eat it too—in not having to identify support for this specificity in the specification of the '388 patent.

## II. Argument

*First*, Sisvel is mistaken that Appellants are applying the wrong legal standards. Although APA review applies, that does not answer the question about the standard of review for the underlying factual and legal issues which may result in reversible error under the APA. *Further,* Sisvel's citations to alleged written

description support aim for the wrong target. The amended claims do not recite the mere *ability* of a mobile terminal to use an additional (larger) transport block size. Rather, Sisvel argues the claims require receiving in a single (first) transmission two different transport block sizes (Resp. Br. 24, 27-28); however, this is nowhere disclosed in the specification. Sisvel also fails to cite adequate support for its dependent claims, specifically the "another message" and "message preceding another message." *Finally*, Sisvel's arguments regarding prior art fail to explain how merely labelling the same transmitted value an RLC size or transport block size renders the claims patentable over the prior art, including TS-25.331.

### A. Sisvel Urges This Court To Apply An Incorrect Standard Of Review

Sisvel's response brief incorrectly asserts that Appellants apply the wrong legal standards by failing to analyze the issues under the APA review standard. (Resp. Br. 2, 26). What Sisvel fails to address is that even though APA review applies, issuing legally erroneous decisions or ones premised on findings of fact that are clearly erroneous (i.e., not supported by substantial evidence) is an abuse of discretion under APA review. *See, e.g.*, *Sisvel Int'l S.A. v. Sierra Wireless, Inc.*, 81 F.4th 1231, 1238 (Fed. Cir. 2023) ("[L]egal error constitutes an abuse of discretion. … If the Board legally erred in concluding that the proposed substitute claims were broader than Sisvel's original claims, the Board would have abused its discretion in

denying the motion to amend ….”). Sisvel is wrong to imply that some higher standard applies to the underlying written description, anticipation, and obviousness issues in this case.

The Federal Circuit applies the substantial evidence standard when reviewing determinations about whether amended claims have written description support or add new matter. *Medytox, Inc. v. Galderma S.A.*, 71 F.4th 990, 996 (Fed. Cir. 2023); *see also Fleming v. Cirrus Design Corp.*, 28 F.4th 1214, 1225 (Fed. Cir. 2022) (Federal Circuit will "review the Board's decision to deny a motion to amend under the Administrative Procedure Act, and we may set aside the Board's action if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' … The Board abuses its discretion if, among other things, its conclusion rests on a clearly erroneous finding of fact.… Whether a claim satisfies the written description requirement is a question of fact."); *Hunting Titan, Inc. v. DynaEnergetics Europe GmbH*, 28 F.4th 1371, 1379 (Fed. Cir. 2022) ("We review the Board's decisions in accordance with the Administrative Procedure Act.… We therefore 'review the Board's legal conclusions de novo and its factual findings for substantial evidence.'" (internal citations omitted)). Similarly, anticipation and the factual findings underpinning obviousness determinations are issues of fact subject to substantial evidence review. *See, e.g.*, *Nike Inc. v. Adidas AG*, 955 F.3d 45, 50-51, 54 (Fed. Cir. 2020) (applying substantial evidence review to underlying factual

determinations relating to obviousness of amended claims). Whether amended claims have been enlarged is an issue of claim construction and thus a question of law reviewed *de novo*. *Sisvel Int'l S.A. v. Sierra Wireless, Inc.*, 81 F.4th at 1238 (Fed. Cir. 2023).

### B. There Is No Substantial Evidence To Support The Board's Finding That The Substitute Claims Are Supported By The Original Disclosure

The Board's determination that the amended claims are supported by the specification is not based on substantial evidence, at least not under the construction adopted by the Board and advanced by Sisvel that requires transmission of a second (additional) transport block size in the same message.

#### *1. There Is No Adequate Written Description Support Claims 66 And 74*

In its response brief, Sisvel argues that the first transmission including an "*additional* transport block size" should be understood to mean that the first transmission includes both a first (unrecited) transport block size, and an additional transport block size. (Resp. Br. 24, 27-28). However, this intrepretation of the claims is unsupported by the '388 patent specification.[1]

[1] There was no waiver of this argument (Resp. Br. pp. 31-23), as it was argued below (Appx770-778, Appx785-786, Appx790; Appx971-976, Appx986-992).

Preliminarily, this reading of the claim is inconsistent with the Board's interpretation of similar language in the original claim, but Sisvel adopts it because it is necessary to Sisvel's attempt to distinguish the claims over the prior art. In the institution decision, the Board found that transmitting the *standard* transport format information (*e.g.*, RLC size, number of transport blocks) in the initial RRC CONNECTION SETUP satisfied the "*additional* transport format information" of the original claims. (Appx521-524.) The Board maintained its findings with respect to original claims 1 and 33 in the FWD. (Appx26-37.) Accordingly, the word "additional" does not necessarily mean "second". Likewise, as applied to the substitute claims, merely replacing "transport block size" with "*additional* transport block size" (Appx925-926) carries no patentable weight, particularly when the claims do not recite *any other* transport block size.

Sisvel has now taken the position that the adjective "additional" requires transmitting both a first and a second/additional transport block size (Resp. Br. 23, 24, 27-28), but as discussed below, this is unsupported by the original disclosure. (Appx986-992.) As shown in Appellants' opening brief (e.g., Op. Br. 21), Sisvel's cited support below for the amended claims (Appx925-926) instead largely refers to allowing an increased message size (Resp. Br. 28), but Sisvel does not dispute that this goal can be accomplished in other ways, for example, by increasing the RLC size. Neither do the claims recite that the additional transport block size exceeds the

standard 168 bits. Moreover, the portion of the specification allowing "mapping of the CCCH channel on ***other*** transport block sizes of the existing RACH" (Appx123 at 13:40-49, corresponding to Appx2229) does not require ***transmission*** of the additional transport block size (for example, RLC sizes may be transmitted, which would implicate transport block sizes). As Sisvel admits, the disclosure refers to "indicating as available both the existing and extended (new) PRACH configurations" and "allow[ing] mapping the CCCH channel on other TB sizes of the existing RACH … signal[ing] whether the UE is allowed to map the CCCH on any PRACH…." (Resp. Br. 9, citing Appx123 at 13:29-31, and 13:10-13).

Sisvel now points to Figure 14 as support (Resp. Br. 29), even though it did not cite to either this figure or the accompanying text as support for the original or revised claim amendment before the Board. (See Appx631-632, Appx926, citing portions corresponding to '388 patent at Appx121 at 10:47-59, Appx122 at 12:55-61, and Appx124 at 13:40-49, and provisional patent applications at Appx1944-1945, Appx1994-1995, Fig. 10 at Appx2010; Appx2013-2014, Fig. 12 at Appx2013.) Even so, there is no mention in Figure 14 or otherwise that the extension includes an additional transport block size: the explanation merely states that "information indicating the available PRACH configurations may be transmitted to a plurality of UEs 2 …." (Appx123 at 14:63-65.) Indeed, the difference between Fig. 10 (Prior art) and Fig. 12 is telling: where the prior art states "*Transmit* PRACH

configurations," the embodiment states, "*Indicate* existing PRACH configuration and extended PRACH configurations." (Resp. Br. 30, referring to Appx110, Appx112.) None of Sisvel's additional citations (Resp. Br. 30-31) make reference to transmitting *first and second* transport block sizes, whether in a first transmission or otherwise. For example, Sisvel's own quotes from the provisional applications merely state that the UE "can use different block sizes," has the "choice of … the block size," and "is allowed to use an … additional block size." (Resp. Br. 34-35, quoting Appx1944-1945). None of Sisvel's evidence to the Board or to this Court provide written description support for the amended claim of a single transmission including two transport block sizes.

Accordingly, the Board's finding that the substitute claims were supported by the specification was not based on substantial evidence, because the specification says nothing about transmitting two (an unrecited first and a second/additional) transport block sizes to the UE in a single transmission. The portions of the specification cited by Sisvel (and the Board) merely recite facilitating a larger message size, not transmitting two separate transport block sizes.

### *2. The Board Interpreted "Additional" Inconsistently*

Sisvel cannot establish that the Board construed the terms of claims 66 and 74 consistently between the original and amended claims, or for purposes of written description support and obviousness.

The Board construed "additional transport format information" in the original claims to be anticipated by TS-25.331's disclosure of the *standard* transport format information. (Appx21, Appx24, Appx33-37.) Indeed, the Board correctly rejected Sisvel's strident claims that the "invention" was the transmission of newly available transport format information without affecting legacy UEs, because this was not claimed. (Appx19-21.) However, inexplicably, the Board construed "additional transport block size" in the amended claims to mean a second transport block size, though the claim did not recite any other transport block size. (Appx81).

Sisvel's shifting arguments are responsible for this inconsistency. Its first motion to amend argued that "additional" could mean any transport format that was merely different from the then-available transport formats. (Appx6410-642.) Then, in its revised motion to amend, it argued that "additional" should mean a different (*e.g.*, larger) block sizes than 168 bits. (Appx935-937.) Finally, at the hearing, Sisvel argued for (and the Board adopted for purposes of analyzing anticipation and obviousness) a more specific meaning of "additional" to mean a *second* transport block size transmitted to the UE in addition to an originally transmitted transport block size:

Ultimately, the Board adopted Sisvel's last proposed interpretation when analyzing the prior art issues (Appx81), although the disclosure the Board pointed to for written description support corresponded to allowing an increased message

size, ***without*** teaching transmitting a first and "additional transport block size". (Appx67-68.) Tellingly, the portion of the Board's FWD Sisvel points to as adopting this meaning is in the prior art section and not part of the Board's analysis of whether the amended claims have written description support. (Resp. Br. 27.) None of the alleged support cited by the Board (Appx67-75) or by Sisvel discloses the "additional transport block size" defined by the Board with respect to prior art. Therefore, the Board's finding of written description support for the substitute claims is not supported by substantial evidence.

In addition, the Board's interpretation of claims 66 and 74 was internally inconsistent. For purposes of finding written description support, the Board credited Sisvel's citations (Appx67-68, citing to Appx121 at 10:47-52 and 8:52-58), which refer only to the goal of allowing an increased message size, suggesting a *broad* interpretation of a first transmission including an additional transport block size. In contrast, when analyzing patentability over the prior art, the Board acknowledged that TS-25.311 transmitted an RLC size, which could be identical to the transport block size, but interpreted the claim *narrowly* to require transmitting two transport block sizes (Appx80-81).

### *3. There Is No Written Description Support For The "another message" And "a message preceding the another message" Recited In Dependent Claims 69 And 77*

Revised substitute dependent claims 69 and 77 (replacing claims 4 and 36), reciting "another message" and "a message preceding the another message," lack written description support. Sisvel acknowledges that these claims attempt to cover omitting START values in a ***later*** message "because it may already have been transmitted" in a prior message. (Resp. Br. 40.) However, Sisvel now presents an additional argument it never made below—that the specification also dislcoses that START values are omitted in an *earlier* message because the UE omnisciently knows that they will be included in a later message. (Resp. Br. 41.) None of Sisvel's citations provide written description support in the specification or priority documents for this reverse order of operations.

#### *a. The Initial Direct Transfer Message Must Be Read In Light Of TS-25.331*

The only support in the specification for omitting START values is omitting them from an RRC CONNECTION REQUEST because "START values … [are] also transmitted in the Initial Direct transfer message." (Appx123 at 13:18-23, corresponding to Appx2228.) However, this language does not disclose that the Initial Direct transfer message *precedes* the RRC CONNECTION REQUEST. Indeed, the relevant technical specification (TS-25.331), teaches that the Initial Direct Transfer message is in fact transmitted *after* the RRC CONNECTION

REQUEST. (Appx3133 ("TS-25.331 teaches that after a successful RRC connection establishment procedure to then send an Initial Direct Transfer message.")) Sisvel's argument (Resp. Br. 42) that TS-25.331 is "beside the point" is unpersuasive: the '388 patent's specification relies heavily on the ETSI standards. (See, e.g., Appx117 at 1:26-49.) Moreover, the Initial Direct Transfer message is nowhere defined in the specification of the '388 patent, but rather is discussed in the context of TS-25.331. If the Board had not considered the contents of TS-25.331, as Sisvel suggests, then the claims would be even more flawed for lack of written description support.

#### *b. TS-25.331 Teaches Transmitting The Initial Direct Transfer Message After The RRC Connection Procedure*

TS-25.331 teaches sending the Initial Direct Transfer message *after* completion of an RRC connection establishment procedure, which includes the RRC CONNECTION REQUEST ("another message"), RRC CONNECTION SETUP ("first message"), and RRC CONNECTION SETUP COMPLETE ("second message"). Sisvel now attempts to deny (Resp. Br. 42) that the Initial Direct Transfer message always follows the RRC CONNECTION SETUP COMPLETE message, but even Sisvel's argument before the Board did not challenge the order of these messages. (Appx1077-1080.) There is no dispute that TS-25.331 does not disclose an Initial Direct Transfer message ("message preceding another message") before the RRC CONNECTION REQUEST ("another message") and thus does not

disclose that "omitting data includes omittting START values transmitted in a message" that comes before the RRC CONNECTION REQUEST message.

Sisvel cannot seriously dispute (Resp. Br. 44) that the claims require the "another message" and "message preceding another message" to come after the "first message" and "second message." Sisvel (and the Board) neglected to consider the causal relationship between the communications recited in the claims, including the messages required by the intermediate dependent claims.

Independent claims 66 and 74 recite that the first message "include[es] information indicating at least one available configuration." Next, claims 68 and 76 recite that this available configuration (made available in the first message) includes a predefined configuration mode. Finally, claims 69 and 77 recite that this predefined configuration mode allows the "new message format" for use in the "another message." Put simply, it would be impossible for the UE to send the "another message" using the "new message format" before it received the "first message", because it could not know that the "new message format" was available to be used.

Appellants have not forfeited this argument, as Sisvel attempts to argue (Resp. Br. 42-43), as it made these arguments repeatedly and strenuously, and they were considered and erroneously rejected by the Board. (Appx68-75.) Sisvel's attempts

to support an order in which the "first message" is followed by "another message" are unavailing.

### *c. Sisvel's "Fourth Embodiment" Is Unavailing*

For support, Sisvel points to the "fourth embodiment," described at Appx123 at 13:18-23. As discussed above, by using terminology defined by TS-25.331 (e.g., Initial Direct Transfer message, START values), this embodiment only supports the order defined by the standard, i.e., Initial Direct Transfer message following the RRC CONNECTION procedure. Fig. 15 does not help Sisvel because it entirely omits the Initial Direct Transfer message, and Sisvel's other cites (Resp. Br. 40) are likewise unavailing: Appx2232 (¶¶144-147, corresponding to Appx124 at 15:14-39) discusses the RRC CONNECTION messages, and makes no mention of START values; Appx2229 (¶131, corresponding to Appx123, 13:40-49) says nothing about START values or their omission; Appx1994-1995 and Fig. 10 refer to the order of message, but nothing about START values. Sisvel's other citations are not part of the specification or priority documents: Appx927 and Appx931-932 are from Patent Owner's Revised Motion to Amend during the IPR; Appx1074 and Appx1077 are from Patent Owner's Reply Brief; and Appx4384 is from LG's Change Request to the working group, which was not included in a priority document. None of these can provide written description support for the claims.

Sisvel's statements at oral argument do not provide any support for transmitting the START values before the RRC CONNECTION procedure. In fact, Sisvel's counsel misled the Board by arguing that "the UE sends an RRC connection request message before the RRC connection setup message and that provides basis for the limitations of another message and a message preceding the another message." (Appx1478 at 34:13-23.) That is, at argument, Sisvel pointed for support to the RRC CONNECTION REQUEST message (the "another message") and the RRC CONNECTION SETUP message (the "first message"). These messages cannot provide support for START values "transmitted in a message preceding the another message" as claimed in claims 69 and 77. Sisvel's cite to Appx1479 at 35:1-3 are irrelevant—merely omitting START values because "they are not needed" does not provide support for affirmatively transmitting them in a "message preceding the another message" as claimed.

Because the specification does not support claims 69 and 77 (and claims 70 and 78, which depend therefrom), the requirements of 35 U.S.C. §§ 112 and 316(d)(3) are not met. *LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1344 (Fed. Cir. 2005) (claims invalid where they broadly claimed a result, but there was no evidence that the specification contemplated generic way of achieving the result); *Amgen v. Sanofi*, 598 U.S. 143 S. Ct. 1243 (2023) (specification must enable full scope of claims).

### C. The Substitute Claims Are Unpatentable Over The Prior Art

After erroneously concluding that the revised proposed substitute claims had written description support, the Board compounded its error by interpreting the amended claims more narrowly *en route* to finding them patentable over the prior art. However, the disclosure of the '388 patent surrounding any "additional" transport block size is no more specific than the prior art (TS-25.331, Bannister, and Beckmann) in this regard. *Arbutus Biopharma Corp. v. Modernatx, Inc.*, Case No. 2020-1183 (Fed. Cir., Apr. 11, 2023) (rejecting challenge to invalidity, observing that the "specificity of the disclosure in the [prior art] patent is the same as in the [challenged] patent.")

The claims are invalid in view of TS-25.331 if "additional transport block size" is interpreted consistently with "additional transport format information" and the specification, because TS-25.331 discloses transmitting dynamic parameters such as the RLC size, which is either numerically identical or offset by a header size from the transport block size. But even if the term "additional transport block size" is given the narrow interpretation that Sisvel argues it should (i.e., that "additional" means a *second* transport block size transmitted in the first transmission with the original transport block size), this limitation would have been unpatentable in view of the prior art, which disclosed (a) dynamic (i.e., varying) transport block sizes,

which required occasionally transmitting updated parameters, and (b) an extension mechanism as disclosed in the '388 patent.

As a preliminary matter, Sisvel is wrong to assert that Appellants bear the burden of showing the Board committed "arbitrary and capricious error or an abuse of discretion." (Resp. Br. 2, 23). To the extent this dispute turns on the Board's application of a mistaken claim construction and the ultimate conclusion regarding obviousness, the FWD is reviewed *de novo*, but the Board's factual determinations regarding the underlying factual conclusions underpinning anticipation and obviousness are reviewed for substantial evidence. *B/E Aero., Inc. v. C&D Zodiac, Inc.*, 962 F.3d 1373, 1379 (Fed. Cir. 2020) (citing *HTC Corp. v. Cellular Commc'ns Equip., LLC*, 877 F.3d 1361, 1369 (Fed. Cir. 2017)) (*de novo* review of the Board's legal conclusions of obviousness and review of its factual findings for substantial evidence).

#### ***1. Claims 66 And 74 Were Anticipated Or Rendered Obvious By TS-25-331***

Sisvel argues that the version of TS-25.331 that Appellants relied upon "cannot disclose the inventions of the '388 patent because they were incorporated into a much later version [of] TS 25.331." (Resp. Br. 6). However, the Board is not tasked with analyzing "inventions", but rather claims. And as with the original claims – which the FWD found anticipated by TS 25.331—the revised claims were likewise disclosed or obvious for the reasons discussed in Appellants' opening brief.

In finding original claims 1 and 33 anticipated by TS-25.331, the Board rejected Sisvel's argument that "additional transport format information" means a second transport format information. (Appx18-24.) The Board thus found that providing a *single* system information block ("SIB") according to TS-25.331 met the claimed "additional transport format information" because it included a *standard* RLC size and number of transport blocks. (Appx26-37.) Sisvel's revised substitute claims 66 and 74 attempted to limit the scope of the original claims by limiting "transport format information" to only transport block size and adding the word "additional". However, for the reasons below, TS-25.331 still anticipates or renders obvious the substitute claims, even under a narrow interpretation.

***a. Claims 66 and 74 Are Anticipated By TS-25.331***

Sisvel's response brief does not deny that the prior art discloses that when there is no header, the transport block size is defined to be ***identical*** to the RLC size transmitted to the UE (Resp. Br. 16, 47-48), and in fact quotes the conditions providing when "TB size=RLC size" (Resp. Br. 49, quoting Appx773-775). That suffices to anticipate the claim under any consistent interpretation of "additional transport block size" that has written description support.

This argument was not forfeited. As Sisvel admits elsewhere (Resp. Br. 16), Appellants argued below that the transport block size was not only easily calculable from the RLC size by adding a header, but it was ***set equal*** to the RLC size in at least

some circumstancees. (Appx973-976, Appx1212-1214.) Indeed, the Board addressed (and erroneously rejected) this argument. (Appx79-81). Moreover, Dr. Olivier's Second Declaration explained the circumstances in which the RLC size equaled the transport block size. (Appx3125-3127). The argument is clearly not forfeited.

Nor can Sisvel seriously dispute this point as a matter of fact because TS-25.331 discloses transmitting a ***numerically identical*** RLC size and using it to set the transport block size. (Appx79-80; Appx2354-2355.) The Board's finding of no anticipation was therefore error and contrary to substantial evidence (Appx80-81: "that still reflects a calculation … and is different from actually transmitting the transport block size.…") By way of example, as explained in Appellants' opening brief (Op. Br. 37), setting one parameter equal to another is not "calculating" it as found by the Board. (Appx80-81 ("that still reflects a calculation based on the information received")). Sisvel attempts to paint Appellants' argument as claim construction (Resp. Br. 50), but Appellants are not proposing a construction of a claim term, as it does not appear in the claims, but rather an explanation of why the Board's conclusion finding a "calculation" was not supported by substantial evidence.

In response, Sisvel acknowledges that the transport block size may be identical to the transmitted RLC size, but then argues that this is not an "additional"

transport block size. (Resp. Br. 48, 50). That response misses the mark because when "additional" is understood consistently with "additional transport format information," that word must be given no patentable weight to distinguish an "additional" transport block size from the transport block size transmitted as the RLC size. (Appx3125-3127.)

The Board's decision to the contrary was not supported by substantial evidence. Indeed even Sisvel admits that one APJ "*simply assumed* that often the block size would not be equal to the RLC size." (Resp. Br. 50). There is nothing in the record supporting this assumption, nor should it matter because nothing in the claims requires that the transport block be transmitted in *every* situation. Sisvel certainly has not mustered any support in the record that the transport block size and RLC size are "often" different (Appx1445 at 41:13-15) but the Board nevertheless rested its conclusion on that unfounded "assumption". Further, if TS-25.331 discloses transmitting the transport block size value in certain scenarios where transport block size ***does*** equal RLC size, which it does, then the reference anticipates. Sisvel does not dispute the legal proposition of inherency. And inherently, when the RLC Size = TB Size, i.e., when there is no MAC header to be added, transmitting the RLC size value is the same as transmitting the transport block size vlaue. Accordingly, the limitations of claims 66 and 74 are disclosed, and the claims are inherently anticipated by TS-25.331 in these instances where no header

is added, and the transport block size is equal to the RLC size. (See, e.g., Appx3124-3125).

### *b. Claims 66 And 74 Would Have Been Obvious In View Of TS-25.331*

Admittedly, the transport block size is not always set to be equal to RLC size; however, even in these instances, the RLC size and transport block size differ by a mere header size. It would have been obvious to transmit the transport block size in addition to (or in lieu of) RLC size in the situations where RLC size is not the same.

The '388 patent admits that when a MAC header is added, "[t]he transport block size … is defined by the RLC PDU size and the MAC header size." (Appx119 at 6:13-14; see also, Appx80.) [2] That is, transport block size is the RLC size plus a header length. Nor does the '388 patent suggest any improvements or unexpected results that may arise from transmitting the transport block size in lieu of the RLC size. On the contrary, the '388 patent itself refers generically to selecting the most appropriate transport format, using the RLC size as the relevant parameter. (Appx123 at 14:23-30 (emphasis added).) This is a mere matter of arbitrary design choice to transmit one or the other, not a patentable invention. (*See* Appx3144-3147, at ¶¶62-66, 108-109 (citing Appx2491-92); Appx1212-1214.) *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 416 (2007), ("[t]he combination of familiar elements

---

[2] Similarly, both TS-25.331 and Bannister disclosed this simple and direct relationship between the RLC size and the transport block size.

according to known methods is likely to be obvious when it does no more than yield predictable results.")

In response, Sisvel again relies on the term "additional" (Resp. Br. 51), but this overworked word cannot support patentability when understood consistently with the Board's reading of "additional transport format information." Similarly, Sisvel responds (Resp. Br. 52) that transmitting an additional transport block size "would only disrupt legacy UEs' operations," but this only highlights the '388 patent's deficiencies—claims 66 and 74 do not provide any mechanism whatsoever for avoiding this purported technical hurdle. The Board rejected Sisvel's same arguments in support of claims 1 and 33. (Appx20). Similarly, nothing in amended claims 66 and 74 mandates any particular block size, much less a block size of more than 168 bits, as Sisvel asserts. (*See* Resp. Br. 52.) All that is recited is that the first message includes an "additional transport block size." In any event, the obviousness inquiry does not require that the prior art disclose the claimed invention as the preferred, or the most desirable, configuration. *Fleming v. Cirrus Design Corp.*, 28 F.4th 1214, 1224 (Fed. Cir. 2022). There is no patentable improvement between transmitting transport block size as claimed, and transmitting an identical or closely related RLC size, as taught by TS-25.331. (See, e.g., Appx974-975, Appx1212-1214.)

### 2. *Claims 66 And 74 Would Have Been Obvious In View Of TS-25.331 In Combination With Bannister*

The Board compounded its errors when analyzing the combination of Bannister and TS-25.331 by disregarding Bannister's pertinent disclosures. (Appx82.) If the word "additional" sufficed to distinguish the claimed transport block size from the transport format information in TS-25.331 by requiring the transmission of a *second* transport block size in the first message, such additional information would nonetheless have failed to render the claims patentable over TS-25.331 in view of Bannister. (Appx972-976, citing, e.g., Appx3123-3127, Appx3138-3140, Appx3143-3146.)

Dr. Olivier's second declaration addressed the amended claim term "additional transport block size" (e.g., Appx3143-3146). Sisvel incorrectly criticizes Appellants for not citing a particular portion of Dr. Olivier's second declaration. To the contrary, Appellants' brief below expressly cited Dr. Olivier's explanation that multiple (i.e., "additional") transport block sizes must be transmitted from time to time. (Appx3145.) This is hardly a controversial statement, as the '388 patent itself admits this in the background of the invention: "the transport block size may be changed during each TTI." (Appx119 at 6:41-42.) Bannister specifically teaches that system information blocks such as SIB5 (system information block type 5, which includes the transport format information, such as

RLC size) are repeatedly sent, such that ***each subsequent*** transmission of a SIB5 includes "additional" transport format information. (Appx3145; Appx969-976.)

The Board committed error when it failed to consider or address these arguments and found that Bannister "is only pertinent to only the unamended or original elements of those claims." (Appx83.) The Board improperly ignored Dr. Olivier's analysis of Bannister with respect to the amended claims.

#### ***3. Claims 66 And 74 Would Have Been Obvious In View Of TS-25.331 In Combination With Beckmann***

To the extent the word "additional" requires a *second* or *different* transport block size to be transmitted, claims 66 and 74 would nonetheless have been obvious over TS-25.331 in view of Beckmann. (See Appx346-371.)

Beckmann discloses the identical extension mechanism described in the '388 patent (Appx124 at 15:14-29; Fig. 14) that purportedly allows the new configuration information to be read by new UEs and ignored by legacy UEs. In particular, Beckmann teaches extending RRC configuration messages by including an additional information element in order to add a list of assignments of logical channels to the transport channels and transport formats. (Appx2622, 9:46-64; *see also* Appx3149-3154.)

As explained by Dr. Olivier, it would have been obvious to modify TS-25.331 to include alternative (i.e., "additional") dynamic parts of available transport formats, such as a different RLC size or transport block size. (Appx3149-3154.)

The combination of TS-25.331 with Beckmann would have been obvious as a combination of prior art elements according to known methods to yield predictable results. (Appx3151.) By teaching an extension of the RLC size (and correspondingly, the transport block size), Beckmann renders obvious transmitting an "additional" transport block size, precisely as claimed in the '388 patent.

In rejecting this basis for obviousness, the Board did not find that Beckmann does not disclose the extension mechanism by which an "additional" transport format is transmitted. Rather, as Sisvel admits (Resp. Br. 56), the Board found that Beckmann "nowhere describes that transport block size is itself directly received by a mobile terminal in a transmitted first message." (Appx84). However, this finding is not supported by substantial evidence, because Beckmann discloses (a) transmitting dynamic parameters of a transport format set such as the RLC size (Appx2619 at 3:1-13); (b) extending the transport format set (Appx2621 at 8:24-10:14), and (c) that "…a MAC-PDU [transport block] is exactly the size of or the length of a MAC header bigger than the RLC-PDU." (Appx2619 at 3:27-40).

Sisvel also argues (Resp. Br. 56-57) that there is a lack of motivation to combine Beckmann with TS-25.331, but Beckmann expressly refers to the same 3GPP technical specification, TS-25.331. (Appx2622 at 10:25; *see also*, Appx3149.)

The Board itself agreed that Beckmann teaches that "transport block size need not be fixed, but may be altered or changed at some time." (Appx84.) The Board wrongly failed to recognize that changing the transport block size (for example, by transmitting an "additional" RLC size, which is numerically identical to the transport block size) is all that the '388 patent claims require.

In short, the combination of Beckmann and TS-25.331 teaches that the UTRAN may transmit a dynamic RLC size and therefore an "additional" transport block size—whether "additional" is interpreted means *different* to the standard transport block size or a *second* transport block size in addition to the standard transport block size. In either case, the combination renders obvious transmitting such an additional transport block size. The Board's finding that the combination did not render claims 66 and 74 obvious was not supported by substantial evidence.

#### ***4. The Additional Limitations Of Dependent Claims 69 And 77 Would Have Been Obvious Over TS-25.331***

Substitute dependent claims 69 and 77, which recite omitting START values, would have likewise been obvious in view of TS-25.331. For the reasons discussed above, TS-25.331 anticipates or renders obvious base independent claims 66 and 74. Sisvel argues that the Board was not "required to analyze every independent claim." (Resp. Br. 60). In the event that patentability of substitute claims 66 and 74 is reversed, the Court should also reverse patentability of claims 69 and 77 as well, or

at least remand for further consideration of these claims, because the Board did not separately analyze the parties' arguments regarding the additional limitations. (Appx82-83.)

#### *a. Sisvel's Arguments for Written Description Support and Patentability Over The Prior Art Are Inconsistent*

Sisvel's arguments in support of written description support and patentability of claims 69 and 77 are irreconcilable. Specifically, the claims recite (a) omitting START values from "another message" and (b) transmitting them in a "message preceding another message". However, even under Sisvel's misguided reading of this claim (which lacks written description support), the claims are unpatentable because both elements are disclosed by TS-25.331.

In particular, for the first element, Sisvel admits that the "another message" is the RRC CONNECTION REQUEST—indeed, that is the only message from which the specification teaches omitting START values. (Appx123 at 13:20-23). However, in arguing for patentability over the prior art (Resp. Br. 61), Sisvel does not argue that TS-25.331 makes START values mandatory ***in the RRC CONNECTION REQUEST***, from which it is purportedly omitted in the claims.

For the second element, i.e., that START values are transmitted in a "message preceding another message," Sisvel's arguments for written description support maps the "message preceding another message" to the Initial Direct Transfer message. (Resp. Br. 43). However, in arguing that the START values are mandatory

(Resp. Br. 61), Sisvel points to a section of TS-25.331 dictating that the Initial Direct Transfer message must include START values. (Appx3091). That is, to the extent that Sisvel's written description support for the "message preceding another message" relies on the Initial Direct Message (Appx123 at 13:22-23), it now *admits* that this is disclosed by TS-25.331.[3]

#### ***b. The Board Erred In Ignoring Evidence That Omitting Optional START Values Would Have Been Obvious***

Appellants showed that under TS-25.331, START values were labelled as "OP" (optional) in the Initial Transfer Direct message. (Appx979.) Sisvel responds that START values are mandatory "in this version of the protocol"; however, that was not the Board's finding. The Board's preliminary guidance mistakenly concluded that the "information elements that are marked as 'OP-Optional' in TS25.331 do not include START values." (Appx863.) Moreover, Dr. Olivier directly addressed the statement that START values are mandatory in "this version" of the protocol, explaining that the clear implication was that it would be optional in future versions, rendering it obvious to omit them. (Appx3135). There is nothing patentable about omitting an optional parameter, particular when it was already transmitted in a prior message.

---

[3] For the reasons discussed above, Appellants disagree that the Initial Direct Transfer message can provide written description support for the "message preceding another message".

Contrary to Sisvel's suggestion (Resp. Br. 60-61), there is ample motivation to omit redundant START values. Per the '388 patent itself, the ***conventional prior art*** method for reducing a message to suit a limited transport block size is omitting information from the message. (Appx120 at 8:30-39.) The purported invention of omitting START values shares the same motivation – reducing message size by "include[ing] only the most necessary data." (Appx123 at 13:18-23). That Sisvel calls omitting START values a "new message format" (Resp. Br. 58) does nothing to make the claimed solution less obvious.

Finally, Sisvel's argument for "strong objective indicia of non-obviousness" (Resp. Br. 59) is baseless, and has already been extensively considered and rejected by the Board in connection with the original claims (Appx44-50). Nothing in the record suggests that the terse reference to "[r]emoval of unused START in Cell update" (Appx3946, citing Appx3987) refers to the "another message" (i.e., RRC CONNECTION REQUEST). Second, in Sisvel's elaborate discussion of the working group (Appx697-708), there is nothing that indicates there was vigorous debate about omission of START values or consideration of alternatives to this proposal – on the contrary, this was accepted for the simple reason that it "add[ed] no overhead to the uplink messages." (Appx701.) In short, there is no nexus between adoption of the working group submission and claims 69 and 77. The mere

fact that 3GPP adopted a proposal (as it did for thousands of others) does not render it non-obvious.

#### *5. Claims 73 And 81 Would Have Been Obvious Over TS-25.331*

Original claims 12 and 44 recited that "selecting one of the at least one available configuration comprises *determining the size of the second message*." Sisvel proposed substitute dependent claims 73 and 81, which replaced the limitation with "selecting a configuration wherein the included additional transport format information and *the included additional transport block size are determined by the size of the second message*." That is, the revised amended claim requires not merely selecting a configuration based on size of the second message, but that the included *transport block size* is determined by the size of the second message.

Putting aside lack of written description support in the specification suggested by Sisvel (Resp. Br. 63, citing Appx123 at 13:50-58), TS-25.331 taught selecting the largest available RLC size (Appx984), which is identical or offset from the transport block size. By selecting the largest RLC size to accommodate the message, the largest transport block size is *inherently* selected. (Appx984; Appx3137-3138.)

In the event that patentability of substitute independent claims 66 and 74 is reversed, the Court should reverse the finding of patentability of claims 73 and 81, or at least remand for further consideration of these claims because the Board did not consider them separately. (Appx82-83.)

## III. Conclusion

For the foregoing reasons, the Court should reverse the Board's FWD granting Sisvel's revised motion to amend claims.

January 16, 2024

Respectfully submitted,
/s/ Guy Yonay

Kyle Auteri
**PEARL COHEN ZEDEK LATZER BARATZ LLP**
7 Times Square, 19th Floor
New York, New York 10036
646.878.0800
KAuteri@PearlCohen.com

Guy Yonay
**PEARL COHEN ZEDEK LATZER BARATZ LLP**
7 Times Square, 19th Floor
New York, New York 10036
646.878.0800
GYonay@PearlCohen.com

***Attorneys for Appellees Telit Cinterion Deutschland GMBH***

Amanda Tessar
**Perkins Coie LLP**
1900 Sixteenth Street, Suite 1400
Denver, Colorado 80202
303.291.2357
ATessar@perkinscoie.com

Daniel T. Keese
**Perkins Coie LLP**
1120 NW Couch Street, 10th Floor
Portland, Oregon 97209-4128
503.727.2132
DKeese@perkinscoie.com

***Attorneys for Appellees Sierra Wireless, ULC***

Jeffrey Gargano
Erik J. Halverson
**K&L Gates LLP**
70 West Madison Street
Chicago, Illinois 60602-4207
312.781.7166
312.807.4243
jeffrey.gargano@klgates.com
Erik.Halverson@klgates.com

Brian P. Bozzo
**K&L Gates LLP**
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
412.355.8235
Brian.Bozzo@klgates.com

***Attorneys for Appellant Honeywell International Inc.***

Jeremy Deane Peterson
**PV Law LLP**
5335 Wisconsin Ave, NW, Ste. 440
Washington, DC 20015
202.871.0140
Jeremy.Peterson@pvuslaw.com

Bradford Cangro
**PV Law LLP**
5335 Wisconsin Ave., NW, Ste. 440
Washington, DC 20015
202.869.4667
Bradford.Cangro@pvuslaw.com

***Attorneys for Appellants TCL Communication Technology Holdings Limited, TCT Mobile International Limited, TCT Mobile, Inc., and TCT Mobile (US) Inc. and TCT Mobile (US) Holdings, Inc.***

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. Cir. R. 32(b)(1) because this brief contains 6,998 words, excluding the parts of the motion exempted by Fed. Cir. R. 32(b)(2).

2. This brief complies with the typeface and type style requirements because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Mac Version 16.64 in 14-point Times New Roman font. Fed. R. App. P. 32(a)(5); 32(a)(6).

Dated: January 16, 2024

By: /s/ Guy Yonay
Guy Yonay

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2024, I caused a copy of this document to be served by transmitting it via e-mail or electronic transmission to Appellees' counsel of record.

Dated: January 16, 2024

By: /s/ Guy Yonay
Guy Yonay